UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| XL SPECIALTY INSURANCE COMPANY, | : | |
| | : | Case No. 12-CV-1598 (PAE) |
| *Plaintiff*, | : | |
| | : | ECF Case |
| v. | : | |
| | : | |
| LEVEL GLOBAL INVESTORS, L.P., ANTHONY | : | **Oral Argument** |
| CHIASSON, GREGORY F. BRENNER, DAVID | : | **Requested** |
| GANEK, JOSEPH L. CHIASSON, and | : | |
| MICHAEL W. ALESSI, | : | |
| | : | |
| *Defendants*. | : | |

_____


# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION
# REQUIRING PLAINTIFF XL SPECIALTY INSURANCE COMPANY
# TO CONTINUE TO ADVANCE DEFENSE COSTS ON COVERED CLAIMS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ 3

PRELIMINARY STATEMENT ........................................................................ 6

FACTUAL BACKGROUND .............................................................................. 8

    A.    The Covered Claims .................................................................... 8

    B.    The XL Policy .............................................................................. 9

    C.    XL's Attempts To Avoid Its Contractual Obligations ......................... 10

ARGUMENT ..................................................................................................... 12

I.      STANDARDS FOR GRANTING INJUNCTIVE RELIEF ............................ 12

II.    THE INSUREDS WILL SUFFER IRREPARABLE HARM FROM XL'S
       DECISION TO STOP ADVANCING DEFENSE COSTS FOR COVERED
       CLAIMS. ..................................................................................................... 13

III.   LEVEL GLOBAL IS HIGHLY LIKELY TO PREVAIL ON THE MERITS OF
       XL'S ARGUMENT THAT THE 'PRIOR KNOWLEDGE PROVISION' BARS
       COVERAGE AS TO ALL INSUREDS UNDER THE XL POLICY AND THAT
       XL CAN STOP PAYING DEFENSE COSTS NOW. .................................... 15

    A.    The Insurers Are Likely To Prevail On The Merits Of XL's Exclusion
          Argument ................................................................................... 16

    B.    The Insureds Are Likely To Prevail On Their Argument That XL Is
          Required To Advance Defense Costs Until A Court Finds There Is No
          Coverage .................................................................................... 20

IV.   THE BALANCE OF HARDSHIPS FAVORS REQUIRING XL TO ADVANCE
       DEFENSE COSTS ........................................................................................ 24

CONCLUSION ................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alstrin v. St. Paul Mercury Ins. Co,*
    179 F. Supp. 2d 376 (D. Del. 2002)...................................................................... 16

*American Home Prod. Corp. v. Liberty Mut. Ins. Co,*
    565 F.Supp. 1485 (S.D.N.Y.1983), *aff'd in relevant part,*
    748 F.2d 760 (2d Cir.1984)....................................................................... 15

*Associated Elec. & Gas Ins. Servs. Ltd. v. Rigas,*
    382 F.Supp.2d 685 (E.D. Pa. 2004) ................................................... 7, 21, 22

*Axis Reinsurance Co. v. Bennett,*
    Nos. 07 7924, 08 3242, 2008 WL 2485388 (S.D.N.Y. June 19, 2008) ........................... 19

*Bianchi v. Lorists' Mut. Ins. Co,*
    422 F. App'x 56 (2d Cir.2011) ....................................................................... 16

*Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York,*
    886 N.E.2d 127, 131 (N.Y. 2008).................................................................... 14

*Carter-Wallace, Inc. v. Admiral Ins. Co.,*
    712 A.2d 1116 (N.J. 1998)............................................................................ 16

*Continental Casualty Co. v. County of Chester,*
    244 F. Supp. 2d 403 (E.D. Pa. 2003) ............................................................ 16

*Critchlow v. First UNUM Life Ins. Co. of Am.,*
    378 F.3d 246 (2d Cir.2004)........................................................................... 16

*Federal Ins. Co. v. Kozlowski,*
    18 A.D.3d 33, 792 N.Y.S.2d 397 (1st Dep't 2005) .................................. 23, 25

*Federal Insurance Co. v. Oak Industries,*
    No. 85-985, 1986 WL 2699 (S.D.Cal. 1986)................................................. 19

*Federal Ins. Co. v. Tyco Int'l Ltd.,*
    No. 6005007/03, 2004 WL 583829 (Sup. Ct. N.Y. County Mar. 5, 2004),
    *aff'd in relevant part*, 18 A.D. 3d 33 (1st Dep't 2005))................................... 23

*Fitzgerald v. Franklin Life Ins. Co.,*
    465 F.Supp. 527 (D.Md. 1979) ..................................................................... 17

*G-I Holdings, Inc. v. Reliance Ins. Co.*,
    No. 00-6189, 2006 WL 776809 (D.N.J. Mar. 24, 2006) ................................ 21

*Gluck v. Executive Risk Indem., Inc.*,
    680 F.Supp.2d 406 (E.D.N.Y. 2010) ....................................................... 16-17

*Home Ins. Co. of Illinois v. Spectrum Information Technologies*,
    930 F.Supp. 825 (E.D.N.Y. 1996) ................................................................ 17

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*,
    252 F.3d 608 (2d Cir. 2001) ......................................................................... 25

*In re Adelphia Communications Corp.*,
    2004 WL 2186582 (S.D.N.Y. Sept. 27, 2004) ............................................. 14

*In re Corr-Williams Tobacco Co.*,
    691 So.2d 424 (Miss. 1997) .......................................................................... 14

*In re CyberMedica, Inc.*,
    280 B.R. 12 (Bankr.D.Mass. 2002) .............................................................. 14

*In re HealthSouth Corp. Ins. Litig.*,
    308 F.Supp.2d 1253 (N.D. Ala. 2004) .................................................... 19, 20

*In re WorldCom, Inc. Sec. Litig.*,
    354 F.Supp.2d 455 (S.D.N.Y. 2005) ..................................................... *passim*

*John Beaudette, Inc. v. Sentry Ins. A Mutual Co.*,
    94 F. Supp. 2d 77 (D. Mass. 1999) .............................................................. 16

*Johnson v. Kay*,
    860 F.2d 529 (2d Cir. 1988) ......................................................................... 13

*Little v. MGIC Indem. Corp.*,
    836 F.2d 789 (3d Cir. 1987) ......................................................................... 24

*McGinniss v. Employers Reinsurance Corp.*,
    648 F.Supp. 1263 (S.D.N.Y. 1986) .............................................................. 24

*Morgan Stanley Group, Inc. v. New England Ins. Co*,
    225 F.3d 270 (2d Cir. 2000) ......................................................................... 16

*Nadel v. Manhattan Life Ins. Co.*,
    211 A.D.2d 900, 621 N.Y.S.2d 180 (3d Dep't 1995) .................................... 17

*Nat'l Union Fire Ins. Co. v. Ambassador Group,*
    157 A.D. 2d 293, 556 N.Y.S.2d 549 (1st Dep't 1990) ..................................................... 23

*Nat'l Union Fire Ins. Co. v. Brown,*
    787 F. Supp. 1424 (S.D. Fla. 1991) ............................................................................ 21

*Nationwide Mut. Ins. Co. v. CNA Ins. Co.,*
    729 N.Y.S.2d 760, 286 A.d.2d 485 (2d Dep't 2001) ....................................................... 17

*No Spray Coalition, Inc. v. City of New York,*
    252 F.3d 148 (2d Cir. 2001)..................................................................................... 13

*Nu-Way Environmental, Inc. v. Planet Ins. Co.,*
    No. 95 573, 1997 WL 462010 (S.D.N.Y. Aug. 12, 1997) ......................................... 14, 15

*Okada v. MGIC Indem. Corp.,*
    823 F.2d 276 (9th Cir. 1987) ................................................................................... 24

*Pepsico, Inc. v. Continental Casualty Co.,*
    640 F.Supp. 656 (S.D.N.Y. 1986) .......................................................................23-24

*Random House, Inc. v. Rosetta Books LLC,*
    283 F.3d 490 (2d Cir. 2002).................................................................................... 13

*Seaboard Surety Co. v. Gillette Co,*
    64 N.Y.2d 304, 486 N.Y.S.2d 873 (1984) .................................................................. 16

*Sunward Electronics, Inc. v. McDonald,*
    362 F.3d 17 (2d Cir. 2004)..................................................................................... 13

*Travelers Cas. & Sur. Co. v. Superior Court,*
    63 Cal. App. 4th 1440 (Cal. Ct. App. 1998) ............................................................... 16

*U.S. Underwriters Ins. Co. v. Affordable Housing Foundation, Inc.,*
    256 F.Supp.2d 176 (S.D.N.Y. 2003)......................................................................... 17

*Vella v. Equitable Life Assurance Society,*
    887 F.2d 388 (2d Cir. 1989)................................................................................... 17

*Wedtech Corp. v. Federal Ins. Co,*
    740 F.Supp. 214 (S.D.N.Y. 1990) .................................................................... *passim*

*XL Specialty Ins. Co. v. Agoglia,*
    No. 08 Civ. 3821, 2009 WL 1227485 (S.D.N.Y. Apr. 30, 2009)...................................... 20

Defendants Level Global Investors, L.P. ("Level Global"), Anthony Chiasson, Gregory F. Brenner, David Ganek, Joseph L. Chiasson, and Michael W. Alessi (collectively "Defendants" or the "Insureds") submit this Memorandum of Law in support of their motion, pursuant to Fed. R. Civ. P. 65 (the "Motion"), for injunctive relief requiring Plaintiff XL Specialty Insurance Company ("XL") to continue to advance defense costs incurred by the Insureds in connection with the "Covered Claims."[1] There is an urgent need for the relief sought as the very liberty of at least one of the Insureds is at stake.  XL is the Insureds' primary insurer, the Insureds are incurring significant defense costs, the Covered Claims are at critical junctures, and XL has flatly refused to reimburse Insureds for those costs despite the plain language of the applicable insurance policy and clear law.

## PRELIMINARY STATEMENT

XL issued an Investment Fund Management and Professional Liability Coverage policy, No. ELU116664-10, to Level Global for the policy period April 21, 2010 to April 21, 2011 (the "XL Policy"), a true and correct copy of which is attached as **Exhibit A** to the Declaration of Shawn P. Naunton (the "Naunton Declaration" or "Naunton Decl.") submitted herewith.  In connection with the Covered Claims, the Insureds requested that XL advance their defense costs in accordance with the terms of the XL Policy, which expressly requires the insurers to advance defense costs for the Insureds as incurred.  Until approximately March 5, 2012, XL recognized and honored its obligation to advance defense costs and, in fact, paid millions of dollars on behalf of Level Global and the Insureds in connection with the Covered Claims.

---

[1]       The "Covered Claims" are defined herein as a civil action brought by the Securities and Exchange Commission captioned *SEC v. Spyridon Adondakis, et al.*, No. 12 CIV 0409 (S.D.N.Y. Jan. 18, 2012), in which Level Global and Anthony Chiasson (and others who are not parties to this action) are named as defendants (the "SEC Action"), *United States of America v. Todd Newman, et al.*, No. 12 MJ 0124 (S.D.N.Y. Jan. 17, 2012), a criminal action in which Anthony Chiasson (and others who are not parties to this action) is named as a defendant (the "Criminal Action"), as well as related civil and/or criminal investigations in which XL has been advancing defense costs.

On March 5, 2012, XL filed this lawsuit and sent a letter to the Insureds unilaterally announcing that it would no longer pay defense costs for the Covered Claims and, in fact, would be seeking restitution of amounts previously advanced (the "XL Letter").  *See* Complaint, ¶¶ 40-41 (Count II); a true and correct copy of the XL Letter is attached as **Exhibit B** to the Naunton Declaration.  XL alleges that a single Level Global employee had prior knowledge of the events leading to the Covered Claims and that Level Global failed to disclose that knowledge in its response to part of a question in the XL Policy Application.  XL has denied coverage for the Covered Claims for any of the Insureds, even though it does not allege that any of the Insureds, or the person who signed the insurance application for Level Global, knew or should have known the facts that supposedly bar coverage.  *Id*. at 7.  (A true and correct copy of the XL Policy Application is attached as **Exhibit C** to the Naunton Declaration.)

In short, XL's position is that if anyone insured under a policy like the one at issue here – even a secretary in a corporation with thousands of employees – knows of facts that might give rise to a valid claim, then coverage is barred for all other insureds even though none of them knew, should have known, or even *could* have known such facts.

XL is wrong on both the facts and the law.  Level Global did not fail to disclose any fact that was required to be disclosed in response to Question 8.b of the Application, and thus the XL Policy covers the Covered Claims.  Moreover, even if XL ultimately prevails on its disclosure argument in this Court, an insurer may not, as a matter of law, make such a unilateral determination *in advance* and refuse to advance defense costs prior to a final judicial determination that no coverage exists.  *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 467 (S.D.N.Y. 2005) ("*WorldCom*"); *Associated Elec. & Gas Ins. Servs. Ltd. v. Rigas*, 382 F. Supp. 2d 685, 702 (E.D. Pa. 2004).

XL's irresponsible position threatens all of the Insureds with imminent, irreparable harm because, unless this Court grants injunctive relief, they may be left without insurance coverage at a critical juncture in the Covered Claims. Accordingly, Defendants respectfully request that this Court promptly order XL to continue advancing the defense costs incurred by the Insureds in connection with the Covered Claims unless and until there is a final judicial determination that the XL Policy does not provide coverage.

## FACTUAL BACKGROUND

### A.    The Covered Claims

On November 22, 2010, the Federal Bureau of Investigation executed a search warrant on Level Global's New York headquarters, and, on the same day, the U.S. Attorney's Office for the Southern District of New York issued a subpoena to Level Global in connection with an investigation of a number of financial firms in connection with potential violations of the securities laws. Complaint ¶ 18. Shortly thereafter, Level Global received a subpoena from the SEC in connection with the SEC's parallel investigation. *Id*. Level Global promptly notified XL of these claims and sought coverage under the XL Policy for the fees and costs incurred by the Insureds in connection therewith. *Id*. ¶¶ 18-19. XL acknowledged receipt of Level Global's notice and began advancing defense costs. *Id*. ¶ 19.

Spyridon Adondakis was a research analyst for Level Global from 2006 through May, 2010. On April 25, 2011, the U.S. Attorney filed a sealed Information against Adondakis in this Court (the "Adondakis Information") and Adondakis pled guilty to conspiracy to commit securities fraud and securities fraud. The Adondakis Information and guilty plea were not made public until January 18, 2012. *Id*. ¶¶ 20, 24 & Ex. B thereto. That same day, the SEC filed the SEC Action naming Level Global as a defendant, one day after the Criminal Action was filed naming Level Global co-founder Anthony Chiasson as a defendant.

The Insureds anticipate that the SEC Action, the Criminal Action, and the ongoing civil and criminal investigations will focus on many complex financial transactions and will involve the review of hundreds of thousands, if not millions of pages of discovery, and a number of fact and expert witnesses.  Because of the complexity and the magnitude of the issues at stake in the Covered Claims, the Insureds have incurred, and anticipate that they will continue to incur, substantial legal expenses.

      B.     <u>The XL Policy</u>

Level Global procured financial services liability insurance for the period April 21, 2010 to April 21, 2011, consisting of a primary policy (the XL Policy) and two excess policies.  The XL Policy is further subdivided into four Coverage Parts:  the "Employment Practices Liability Coverage Part," the "Professional Liability Coverage Part," the "Management Liability Coverage Part," and the "Management and Professional Liability Coverage Part."  In three of those Parts, the Policy names as Insured Level Global and "any past, present or future director, officer, partner, principal, member, trustee or employee of [Level Global], including any part-time, seasonal, or temporary employee" as an Insured Person.  Naunton Decl. **<u>Exhibit A</u>** (Policy), "Employment Practices Liability Coverage Part" at 1; *id.*, "Professional Liability Coverage Part" at 1 (Insured includes Level Global and "any past, present or future director, officer, partner, principal, member, trustee or employee of" Level Global); *id.*, "Management and Professional Liability and Coverage Part" at 1 (same).[2]

The XL Policy provides Level Global and its employees with a $10,000,000 aggregate limit of liability for coverage for a Claim, which is further defined, *inter alia*, as "any civil,

---

[2]      In the fourth Coverage Part, the "Management Liability Coverage Part," the definition of Insured is narrower, including only Level Global and "any past, present or future director, officer, or member of the Board of Managers" of Level Global (or their functional equivalent) and not any employee.  *Id.*, "Management Liability Coverage Part" at 1.

criminal, administrative or regulatory investigation by a federal, state, local or foreign government authority, agency (including without limitation an investigation by the … Securities and Exchange Commission)…." *Id.*, "General Terms and Conditions" at 1. There can be no serious dispute – and indeed XL does not dispute – that the Covered Claims are "Claims" as defined in the XL Policy.

Under the General Terms and Conditions applicable to the Policy, "Loss" is further defined by the XL Policy explicitly to include defense costs incurred during the pendency of Claims. *Id.* at 2. Specifically, the XL Policy provides that the "Insurer shall advance covered Defense Expenses on a current basis. The Insurer shall advance such covered Defense Expenses no later than 90 days (in the case of an Insured Person, 60 days) after receipt of written notice of such costs by the Insurer." *Id.* at 3.

C.      XL's Attempts To Avoid Its Contractual Obligations

On or about March 5, 2012, XL commenced this lawsuit naming Level Global and the other Insureds as defendants and seeking (1) a declaration that it has no financial obligations to any of its Insureds in connection with the Covered Claims; and (2) "restitution" for the defense costs XL has previously advanced to the Insureds. XL further advised Level Global, by letter from its counsel, that it is no longer willing to advance defense expenses for Level Global or any Insured in connection with the Covered Claims, functionally rescinding its Policy with respect to the Insureds. *See* Naunton Decl. **Exhibit B** (XL Letter).

In doing so, XL did <u>not</u> dispute that the Covered Claims are "Claims" covered by the XL Policy. Instead, XL argues that the "Prior Knowledge Provision" of the application for insurance (which applies to Question 8.a and 8.b on the application for the XL Policy (the "Application")) bars coverage. Complaint ¶¶ 17, 31-39. Question 8.b asks "Is any person(s) or entity(ies) proposed for this insurance aware of any fact, circumstance or situation which might afford valid

-10-

grounds for any claim such as would fall within the scope of the proposed insurance?" Naunton Decl. **Exhibit C** (Application) at 2. Immediately thereafter, the Application notes that "any Claim arising from any claims, facts, circumstances or situations <u>required to be disclosed in response</u> to 8.a) or 8.b) above is excluded from the proposed insurance." *Id*. (emphasis added)

XL's argument, then, rests upon two premises: (1) that, by virtue of his plea agreement, Adondakis necessarily was aware of "any fact, circumstance, or situation which might afford valid grounds for any claim" under the XL Policy at the time it was issued in April 2010; and (2) Level Global was "required to disclose" what Adondakis knew. *See* Complaint ¶¶ 35, 36. Therefore, according to XL, Adondakis's alleged knowledge should be imputed to the company and its employees in order to bar coverage not just for Adondakis, but for Level Global itself and for all of the Insureds. *Id*. At this early stage of the litigation, Level Global is without sufficient knowledge to determine whether Mr. Adondakis was "aware of any fact, circumstance or situation" that might afford valid grounds for a claim at the time the Application was made and thus does not concede that Mr. Adondakis was so aware.

XL's complaint ignores two critical provisions of the Application. Immediately after the "Prior Knowledge Provision," XL defines – in bold, capital letters – precisely what the "undersigned authorized agent" of the insured is "required to disclose." That language states:

> **FOR THE PURPOSE OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF THE PERSON(S) AND ENTITY(IES) PROPOSED FOR THIS INSURANCE DECLARES THAT <u>TO THE BEST OF THEIR KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY</u>, THE STATEMENTS HEREIN ARE TRUE AND COMPLETE.**

Naunton Decl. **Exhibit C** (Application) at 3 (emphasis added).

In addition, Condition "K" of the XL Policy specifically warrants that:

> No knowledge or information possessed by any Insured will be imputed to any other Insured.  In the event that any of the particulars or statements in all material respects in the Application are untrue, this Policy will be void with respect <u>to any Insured who had actual knowledge of the untruth in any material respect knew of such untruth</u>.

Naunton Decl. **Exhibit A** (Policy), "General Terms and Conditions," at 6 (emphasis added).

Moreover, in each of the four Coverage Parts, after the section on "Exclusions," the XL Policy also warrants to the Insureds that "No conduct of any Insured Person will be imputed to any other Insured Person to determine the application of any of the above EXCLUSIONS."  *Id.* (Policy), "Employment Practices Liability Coverage Part" at 4; *id.*, "Professional Liability Coverage Part" at 4 (same); *id.*, "Management Liability Coverage Part" at 4 (same); *id.*, "Management and Professional Liability Coverage Part" at 5 (same).

Level Global's Application was signed by its Chief Operating Officer, Jeremy Bohrer, not Mr. Adondakis.  XL does not and cannot allege that, at the time he signed the application, Mr. Bohrer: 1) did not believe the statements in the application to be true and complete after reasonable inquiry; or 2) had "actual knowledge" or otherwise should have known of Mr. Adondakis's activities.  Indeed, it is not clear how Mr. Bohrer could possibly have known what Mr. Adondakis knew, given that the Information and plea agreement to which XL refers alleged that Mr. Adondakis was part of a secret conspiracy to trade on insider information.  *See* Complaint ¶¶ 22-25.  By the plain language of the XL policy, any knowledge possessed by Mr. Adondakis at the time of the Application cannot be imputed to any other Insured.

<u>ARGUMENT</u>

## I.   <u>STANDARDS FOR GRANTING INJUNCTIVE RELIEF.</u>

Insureds seek a preliminary injunction requiring XL to continue advancing defense costs to its Insureds, just as it had prior to March 5, 2012.  To prevail, a party seeking a preliminary

injunction must generally show:  (1) that it is likely to suffer irreparable harm in the absence of the requested relief; (2) that it is likely to succeed on the merits or there are sufficiently serious questions going to the merits so as to make them a fair ground for litigation; and (3) the balance of the hardships tips in favor of the moving party.  *See, e.g., Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004); *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002).

When an injunction seeks to alter the status quo, a movant typically must show a "substantial likelihood" of success on the merits.  *See No Spray Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001).  However, a party need only demonstrate a "likelihood" of success on the merits "[w]here a preliminary injunction grants only part of the relief to which a movant would be entitled on the merits and requires a party 'to do what it should have done earlier.'"  *WorldCom*, *supra*, 354 F. Supp. 2d at 463 (quoting *Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988)).  Here, the plain language of the Policy requires XL promptly to "advance covered Defense Expenses" on behalf of the Insureds.  Naunton Decl. **Exhibit A** "General Terms and Conditions" at 2-3; *see supra* at 4-5.  Clearly, payment of defense costs is something XL "should have been doing earlier" (and in fact *was* doing earlier) by the plain terms of the policy it drafted.  Moreover, by their Motion the Insureds are seeking only "part of the relief" – the advancement of defense costs – and not a final determination by this Court at this time as to coverage.  The Insureds therefore need show only a likelihood of success on the merits, not a "substantial" one.  Of course, as set forth *infra*, Insureds' argument easily meets either standard.

## II.    THE INSUREDS WILL SUFFER IRREPARABLE HARM FROM XL'S DECISION TO STOP ADVANCING DEFENSE COSTS <u>FOR COVERED CLAIMS</u>.

The first factor this Court must consider in determining whether to grant injunctive relief

is the likelihood that the Insureds will suffer irreparable harm.  It is well-established that an insurer's refusal to advance defense expenses to its insureds under a D&O policy (providing coverage similar in relevant part to the Policy) causes irreparable harm to the insureds sufficient to warrant injunctive relief.  *WorldCom*, 354 F.Supp.2d at 469 ("The failure to receive defense costs when they are incurred constitutes 'an immediate and direct injury' … [and] [t]o hold otherwise, 'would not provide insureds with protection from financial harm that insurance policies are presumed to give.'") (citing *Wedtech Corp. v. Federal Ins. Co.*, 740 F.Supp. 214, 221 (S.D.N.Y. 1990) and *Nu-Way Environmental, Inc. v. Planet Ins. Co.*, No. 95 573, 1997 WL 462010 at \*3 (S.D.N.Y. Aug. 12, 1997)); *see In re Adelphia Communications Corp.*, 2004 WL 2186582, \*7 (S.D.N.Y. Sept. 27, 2004) (holding, *inter alia*, that failure to provide defense costs constituted irreparable harm to insureds); *In re CyberMedica, Inc.*, 280 B.R. 12, 18-19 (Bankr.D.Mass. 2002) (granting relief from automatic stay in bankruptcy for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under D&O policy); *see also In re Corr-Williams Tobacco Co.*, 691 So.2d 424, 429 (Miss. 1997) (settlement driven by a party's inability to pay defense expenses constitutes irreparable harm).

As the *WorldCom* court explained:

> Every party, including each director defendant, requires effective representation.  It is impossible to predict or quantify the impact on a litigant of a failure to have adequate representation at this critical stage of litigation.  The ability to mount a successful defense requires competent and diligent representation.  The impact of an adverse judgment will have ramifications beyond the money that will necessarily be involved.  There is the damage to reputation, the stress of litigation, and the risk of financial ruin – each of which is an intangible but very real burden.

354 F.Supp.2d at 469; *see Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*, 886

N.E.2d 127, 131 (N.Y. 2008) (an insured bargains not only for the monetary benefits of the insurance contract but also "for the peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe") (internal citations omitted).

This Court's prior decision in *Wedtech Corp. v. Federal Ins. Co.*, 740 F.Supp. 214 (S.D.N.Y. 1990), is particularly instructive.  In *Wedtech*, this Court held that Wedtech and its officers and directors "would suffer an immediate and direct injury if the Court did not grant the relief plaintiffs seek," *id*. at 221, reasoning that absent such relief, insureds would be deprived of their defense expenses:

> Where an insurance policy obligates the insurer to defend the insured, the insurer must defend the insured in every suit in which the complaint permits proof of facts establishing coverage until the insurer is able to exclude the possibility of any recovery for which it provided insurance. *American Home Prod. Corp. v. Liberty Mut. Ins. Co.,* 565 F.Supp. 1485, 1499 (S.D.N.Y.1983), *aff'd in relevant part,* 748 F.2d 760, 763 (2d Cir.1984).

*Id.  See Nu-Way*, 1997 WL 462010 at *3 ("[T]o hold otherwise would not provide insureds with protection from financial harm that insurance policies are presumed to give.").

Here, as in *WorldCom* and *Wedtech*, the Insureds face ongoing civil and criminal actions and investigations.  Like the insureds in *WorldCom*, the Insureds face "damage to reputation, the stress of litigation, and the risk of financial ruin – each of which is an intangible but very real burden."  354 F.Supp.2d at 469.  In addition, Mr. Anthony Chiasson's very liberty is at stake. There can be no serious dispute that the Insureds will suffer irreparable harm in the event that XL ceases to pay the defense costs necessary to defend the Covered Claims.  The first factor thus weighs strongly in favor of granting the requested injunctive relief.

**III.    LEVEL GLOBAL IS HIGHLY LIKELY TO PREVAIL ON THE MERITS OF XL'S ARGUMENT THAT THE 'PRIOR KNOWLEDGE PROVISION' BARS COVERAGE AS TO ALL INSUREDS UNDER THE XL POLICY AND THAT XL CAN STOP PAYING DEFENSE COSTS NOW.**

The second factor to be weighed in considering whether to grant injunctive relief here is Level Global's likelihood of success on the merits.  The Insureds are highly likely to prevail on the merits of XL's argument that the knowledge of a single insured of alleged facts that might give rise to a claim bars coverage for all other insureds under the "Prior Knowledge Provision" even though none is alleged to have known those facts.  The Insureds are also highly likely to prevail on their argument that XL is required to advance defense costs notwithstanding XL's argument that the exclusion applies unless and until this Court determines that the exclusion applies.

A.    <u>The Insurers Are Likely To Prevail On The Merits Of XL's Exclusion Argument.</u>

It is well-settled that once an insured has demonstrated that the policy language covers the claim or claims at issue – as the Insureds have done here, and as XL does not contest; *see supra* at 4-5, "the burden then shifts to the insurer to establish that an exclusion applies." *Bianchi v. Lorists' Mut. Ins. Co.*, 422 F. App'x 56, 58 (2d Cir.2011) (*citing Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256–57 (2d Cir.2004); *see Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 307, 486 N.Y.S.2d 873, 876 (1984) ("[B]efore an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case.")[3]

Moreover, to the extent that there is any ambiguity in the exclusion language, each term

---

[3]     *Accord Morgan Stanley Group, Inc. v. New England Ins. Co.,* 225 F.3d 270, 276 n.1 (2d Cir. 2000); *Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 388 (D. Del. 2002); *Continental Casualty Co. v. County of Chester*, 244 F. Supp. 2d 403, 407 (E.D. Pa. 2003); *John Beaudette, Inc. v. Sentry Ins. A Mutual Co.*, 94 F. Supp. 2d 77, 135 (D. Mass. 1999); *Travelers Cas. & Sur. Co. v. Superior Court*, 63 Cal. App. 4th 1440, 1454 (Cal. Ct. App. 1998); *Carter-Wallace, Inc. v. Admiral Ins. Co.*, 712 A.2d 1116, 1125 (N.J. 1998).

"should be interpreted as narrowly as possible in an insurance exclusion, because any ambiguities in insurance contracts should be resolved in favor of the insured."   *Gluck v. Executive Risk Indem., Inc.*, 680 F.Supp.2d 406, 419 (E.D.N.Y. 2010); *U.S. Underwriters Ins. Co. v. Affordable Housing Foundation, Inc.*, 256 F.Supp.2d 176, 180 (S.D.N.Y. 2003) ("[I]f there is any ambiguity in the policy it must be construed in favor of the insured."); *Nationwide Mut. Ins. Co. v. CNA Ins. Co.*, 729 N.Y.S.2d 760, 762, 286 A.d.2d 485, 487 (2d Dep't 2001). Similarly, all language in an insurance policy <u>application</u> is also to be construed in favor of the insured.  *Home Ins. Co. of Illinois v. Spectrum Information Technologies*, 930 F.Supp. 825, 837 (E.D.N.Y. 1996); *see Vella v. Equitable Life Assurance Society*, 887 F.2d 388, 392 (2d Cir. 1989) (same); *Nadel v. Manhattan Life Ins. Co.*, 211 A.D.2d 900, 901, 621 N.Y.S.2d 180, 182 (3d Dep't 1995); *see also Fitzgerald v. Franklin Life Ins. Co.*, 465 F.Supp. 527, 535 (D.Md. 1979) ("If the application form prepared by the insurance company is ambiguous, it must be construed in a manner favorable to the policyholder.").

Thus, in order to prevail on the merits of its exclusion argument, XL will have to prove that the Prior Knowledge Provision *unambiguously* bars coverage as to all of XL's Insureds under the XL Policy.   The plain language of the Policy – and in particular, two interlocking provisions – is fatal to this argument.

1.    *The "Reasonable Inquiry Provision"*

First, the exclusion upon which XL purports to rely states that "any Claim arising from any claims, facts, circumstances or situations <u>required to be disclosed in response</u> to 8.a or 8.b above is excluded from the proposed insurance."   Naunton Decl. **<u>Exhibit C</u>** (Application) at 2 (emphasis added).   Immediately thereafter, the Application defines what is meant by the term "required to be disclosed" – in bold-faced type in all capitals:

> **FOR THE PURPOSE OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF THE PERSON(S) AND ENTITY(IES) PROPOSED FOR THIS INSURANCE DECLARES THAT <u>TO THE BEST OF THEIR KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY</u>, THE STATEMENTS HEREIN ARE TRUE AND COMPLETE.**

*Id*. at 3 (bold in original; underline added). This "Reasonable Inquiry Provision" is specifically directed to "the authorized agent" of the Insureds – in this case, Level Global's Chief Operating Officer, Mr. Bohrer – and covers what Mr. Bohrer "declares" in the Application. *Id*. In short, Level Global was required to disclose in response to Question 8.b what Mr. Bohrer believed to be true and correct to the best of his knowledge and belief after reasonable inquiry.

XL's argument that Level Global was required to disclose purportedly known to Mr. Adondakis irrespective of whether Mr. Bohrer knew or should have known those facts is thus precluded by the plain language of the Application. As a practical matter, adopting such a reading would make coverage under the Policy illusory because no one can fairly be required to disclose facts on an insurance application they did not know and, indeed, *could* not have known. XL's argument that Level Global was required to do so defies common sense and the reasonable expectations of any insured.

Thus, under the Reasonable Inquiry Provision, XL's exclusion does not bar all claims arising out of Mr. Adondakis's knowledge and conduct (as XL argues in its Complaint), but only those claims arising out of information that was "required to be disclosed" in the Application; i.e., information that Mr. Bohrer either knew or should have known after a "reasonable inquiry" on or before April 20, 2010. Because XL does not even *allege* that Mr. Bohrer knew or should have known of Mr. Adondakis's alleged knowledge and/or conduct at the time of the insurance Application, the "Prior Knowledge Provision" does not apply.

-18-

2.   *The Non-Imputation and Severability Clause*

XL suggests that Mr. Adondakis' purported knowledge of facts that could have given rise

to a Covered Claim should be imputed to the Insureds under the Prior Knowledge Provision and

therefore bar coverage for all Insureds.  This argument is expressly precluded by Condition "K"

of the XL Policy which provides that:

> No knowledge or information possessed by any Insured will be
> imputed to any other Insured.   In the event that any of the
> particulars or statements in all material respects in the Application
> are untrue, this Policy will be void with respect <u>to any Insured who
> had actual knowledge of the untruth in any material respect knew
> of such untruth</u>.

Naunton Decl. **Exhibit A** (Policy), "General Terms and Conditions," at 6 (emphasis added).

This is often referred to as a "severability" clause.  This language has been interpreted by the

courts as providing "separate coverage for the individual insureds and unambiguously provides

no statement or knowledge of any insured will be imputed to the other insureds covered by the

Policy."  *In re HealthSouth Corp. Ins. Litig*., 308 F.Supp.2d 1253, 1278 (N.D. Ala. 2004)

(analyzing *Federal Insurance Co. v. Oak Industries*, Civil No. 85-985-G(M), 1986 WL 2699

(S.D.Cal. 1986)); *Axis Reinsurance Co. v. Bennett*, Nos. 07 7924, 08 3242, 2008 WL 2485388

(S.D.N.Y. June 19, 2008) (examining identical severability clause).[4]

In *HealthSouth*, the Court held that a severability provision virtually identical to the one

in the XL Policy precluded insurers' argument that knowledge on the part of the insured entity

---

[4]       In addition to the plain language of the General Terms and Conditions of the XL Policy, this severability
language is repeated four times in each of the Coverage Parts after the section on "Exclusions," warranting to the
Insureds that "No conduct of any Insured Person will be imputed to any other Insured Person to determine the
application of any of the above EXCLUSIONS."   Naunton Decl. **Exhibit A** (Policy), "Employment Practices
Liability Coverage Part" at 4; *id*., "Professional Liability Coverage Part" at 4 (same); *id*., "Management Liability
Coverage Part" at 4 (same); *id*., "Management and Professional Liability Coverage Part" at 5 (same).

barred coverage for all other insureds.[5]  The *HealthSouth* court noted that the insurers' argument "totally misreads the severability clause and renders an absurd result."  *Id*. at 1284.  The court reasoned:

> If the [insurers] can rescind coverage because of misstatements or misleading statements in HealthSouth SEC filings, without showing that the individual insured *knew* of the misstatement, then coverage under the D&O policies would be totally illusory.  Under the interpretation urged by the [insurers], officers and directors who have no specific control over or intimate knowledge about statements … would not have insurance protection in cases of misstatements by the corporation or other insureds.  The insurers' argument would apply even if an individual director could not possibly determine the existence of any intentional deception….

*Id*. at 1285.

The court's rationale in *HealthSouth* applies with equal force here.  Under the view urged upon this Court by XL, its Insureds – including Level Global and other innocent officers and directors – who are not alleged to have known of Mr. Adondakis's activities – would be stripped of protection and defense costs for claims arising out of those unknown activities.  This result is plainly wrong in light of the severability clause contained in Condition "K."

B.    The Insureds Are Likely To Prevail On Their Argument That XL Is Required To Advance Defense Costs Until A Court Finds There Is No Coverage.

Even assuming *arguendo* that the Insureds were not likely to prevail on XL's exclusion argument, the case law leaves little doubt that Insureds will prevail on their argument that XL is

---

[5]       In *XL Specialty Ins. Co. v. Agoglia*, No. 08 Civ. 3821, 2009 WL 1227485 (S.D.N.Y. Apr. 30, 2009), this Court held that a severability clause substantially the same as Condition K of the Policy "applies only to statements made in the Application" and not to the exclusionary language in the policy itself.  *Id*. at *11, 15.  Since the Prior Knowledge Provision at issue there was not found in the application, this Court held that the severability clause did not apply to it.  Here, however, XL relies on Level Global's response to Question 8.b of the Application and the Prior Knowledge Provision, both of which are found in the application.  *See* Complaint ¶ 17 and *supra* at 6.  It also bears emphasis that here, unlike in *Agoglia,* the Policy expressly provides that the knowledge of one insured cannot be imputed to another insured for purposes of applying *any* of the exclusions in the Policy.  *Compare supra* at n.5 (XL Policy warrants that "No conduct of any Insured Person will be imputed to any other Insured Person to dermine the application of any of the above EXCLUSIONS") with *Agoglia*, 2009 WL 1227485 at *3 (severability clause at issue stated "If any of the particulars or statements in the Application is unsound, this Policy will be void with respect to any Insureds who knew of such untruth.").  There can be no question that the XL Policy was written to apply severability to any and all exclusions.  *Agoglia* therefore has no application here.

required to advance defense costs until there is a final determination of no coverage.

For example, in *Rigas*, *supra*, the Court held that an insurer seeking to avoid coverage under a Prior Knowledge Provision substantially identical to the one XL relies on here is nevertheless required to advance defense costs while it litigates the application of the exclusion. There, the insurer sought to avoid coverage for five former officers and directors of Adelphia on the grounds that its policy had been procured by fraud, and that several exclusions in the policy were applicable, including a "prior knowledge" exclusion similar to the one XL relies on here. 382 F.Supp.2d at 687, 696.  The insureds moved for an order requiring the insurer to advance their defense costs in underlying actions against them, and the Court granted the motion. Applying policy provisions similar to the pertinent provisions here, the Court held that the insurer could not unilaterally determine that it was entitled to rescind the policy or that the exclusions it relied on were applicable, and that its contractual obligation to advance defense costs as incurred remained in place unless and until there was an adjudication as to a lack of coverage.  *Id*. at 691-92, 699-701 ("Insurance carriers do not function as courts of law.  If a carrier wants the unilateral right to refuse a payment called for in the policy, the policy should clearly state that right.  This policy does not do so."); s*ee also G-I Holdings, Inc. v. Reliance Ins. Co.*, No. 00-6189, 2006 WL 776809, at *3 (D.N.J. Mar. 24, 2006) (where underlying action fell within insuring agreement in D&O policy, insurer was obligated to advance defense costs notwithstanding potential application of exclusion in policy); *Nat'l Union Fire Ins. Co. v. Brown*, 787 F. Supp. 1424, 1431-34 (S.D. Fla. 1991) (same).

XL's position that it can stop advancing defense costs because it says the Prior Knowledge Provision applies is directly contradicted by *Rigas*.  As in *Rigas*, if XL "want[ed] the unilateral right to refuse a payment called for in the policy, the policy should clearly state that

right."  382 F.Supp.2d at 701.  The Policy, like the policy at issue in *Rigas*, simply "does not do so."  XL therefore must continue to advance defense costs unless and until there is a judicial determination of no coverage.

New York courts have not directly dealt with these issues in the context of an applicable Prior Knowledge Provision, but have repeatedly held that an insurer seeking to rescind a policy must continue to advance defense costs unless and until the policy is determined by a court to be rescinded. *See, e.g., WorldCom, supra* and *Wedtech, supra*.  Presumably in light of these cases, XL has characterized its argument in the Complaint as one for "a declaration of no coverage," Complaint ¶¶ 38-39, as opposed to one for rescission.  This is the proverbial distinction without a difference, at least from the perspective of the Insureds.  XL has already advanced millions of dollars in defense costs in connection with the Covered Claims, which, by the terms of the XL Policy, partially exhaust the $10 million in aggregate limits available to the Insureds.  The Insureds anticipate that current defense costs alone will likely exhaust the remainder of the XL Policy, and are not aware of any other pending claims against the Insureds.  A "declaration of no coverage" is thus tantamount to rescinding the Policy and its remaining limits from the perspective of the Insureds.

The law is clear that an insurer's unilateral determination that no coverage exists – whether via a claim for rescission or for a "declaration of no coverage" – simply does not entitle that insurer to stop advancing defense costs.  Indeed, the duty to pay defense costs is far broader than the duty to indemnify, and "exists whenever a complaint against the insured alleges claims that may be covered under the insurer's policy."  *WorldCom*, 354 F. Supp. at 464 (quoting *Fed. Ins. Co. v. Tyco Int'l Ltd.*, No. 6005007/03, 2004 WL 583829 at *6 (Sup. Ct. N.Y. County Mar. 5, 2004), *aff'd in relevant part*, 18 A.D. 3d 33 (1st Dep't 2005)); *Wedtech*, 740 F.Supp. at 221.

Thus, for example, in *WorldCom*, the court made clear that a coverage dispute does not affect the insurer's duty to advance defense expenses.  354 F. Supp. 2d at 467.  Mr. Roberts, the former chairman of WorldCom, faced a number of lawsuits arising out of that company's collapse.  Continental, one of the excess insurers, claimed that its policy was void *ab initio* due to misrepresentations by representatives of WorldCom, and then commenced an action seeking a declaration that it had properly rescinded the policy – which is tantamount to what XL has done here.  *Id*. at 460-61.  Roberts moved for an order compelling Continental to advance his defense costs.  Continental opposed the motion, arguing that Roberts was required to first show that he could defeat its rescission defense.  *Id*. at 462-63.

The *WorldCom* court held that the duty to advance defense costs to its insured in connection with the underlying actions against him was not abated simply because ultimate coverage was in dispute.  *Id*. at 464-67.  Instead, the court ruled that an insurer's contractual obligation to pay defense costs continues unless and until there is a final adjudication that the policy does not provide coverage.  *Id*. at 466; *see Fed. Ins. Co. v. Kozlowski,* 18 A.D.3d 33, 42, 792 N.Y.S.2d 397, 404 (1st Dep't 2005) ("[I]nsurers are required to make contemporaneous interim advances of defense expenses where coverage is disputed, subject to recoupment in the event it is ultimately determined no coverage is afforded.") (citing *Nat'l Union Fire Ins. Co. v. Ambassador Group,* 157 A.D. 2d 293, 297, 556 N.Y.S.2d 549, 553 (1st Dep't 1990)).

The *Wedtech* court reached the same conclusion:

> Though the policy at issue does not impose an express duty to defend upon Federal, it does provide that Federal will pay on behalf of Wedtech "all loss" for which Wedtech grants indemnification to its directors, and "loss" is explicitly defined to include "defense costs." Courts have established that under such provisions, the insurance company's obligation to reimburse the directors attaches as soon as the attorneys' fees are incurred. *Pepsico, Inc. v. Continental Casualty Co.,* 640 F.Supp. 656, 659–

> 60 (S.D.N.Y.1986); *McGinniss v. Employers Reinsurance Corp.,* 648 F.Supp. 1263, 1271 (S.D.N.Y.1986); *Okada v. MGIC Indem. Corp.,* 823 F.2d 276, 280 (9th Cir.1987); *Little v. MGIC Indem. Corp.,* 836 F.2d 789, 793–96 (3rd Cir.1987).

*Wedtech*, 740 F.Supp. at 214.

The Insureds are likely to prevail on their argument that the Prior Knowledge Provision does not bar coverage for all insureds simply because one insured may have known of facts that might give rise to a valid claim. The Insureds also are likely to prevail on their argument that XL must advance defense costs while it litigates the applicability of the Prior Knowledge Provision. The likelihood of success prong of the test for issuance of injunctive relief is plainly satisfied here.

## IV.  THE BALANCE OF HARDSHIPS FAVORS REQUIRING XL TO ADVANCE DEFENSE COSTS.

The final factor this Court must assess in determining whether to grant injunctive relief is the balance of hardships. By initiating this lawsuit with no prior notice, XL has attempted to force the Insureds to shoulder the burden of their own defense costs. This is a serious blow to the ability of the Insureds to protect their interests – including, in the case of pending criminal actions, their liberty as well as their financial and reputational interests.

As set forth in Part II, *supra*, the Insureds here run the risk of very real irreparable harm, including the "damage to reputation, stress of litigation, and the risk of financial ruin" inherent in mounting a successful defense. *WorldCom*, 354 F. Supp. 2d at 469; *see supra* at Part II (discussing irreparable harm). By contrast, an injunction requiring XL to comply with its contractual obligations to advance defense costs imposes no harm on XL, because XL already has the "heavy" duty to pay for such costs under New York law, and such duty ordinarily remains in effect until there has been a final judicial determination that there is no coverage. *Id*.

at 464-65; *see infra* at Part III.C.  Moreover, the clear law in the Second Circuit (as elsewhere) is that insurers with provisions such as those in the XL Policy have "a separate, contractual duty to defend" which endures "until it is determined *with certainty* that the policy does not provide coverage."  *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original).

In sum, requiring XL to do what it is obligated by contract and by law to do causes no harm at all.  But even if XL were eventually to prevail on its coverage argument, granting injunctive relief here would not interfere with its right to seek a full remedy on its claims, including both the declaration of no coverage that it seeks in Count I as well as the "restitution" it seeks in Count II.  *See WorldCom*, 354 F.Supp.2d at 469-71 (noting that the insurer must pay defense costs in advance, subject to the right to recover such costs in the event the insurer prevails as to lack of coverage); *Kozlowski*, 18 A.D.3d at 42 (same).  Accordingly, the balance of hardships strongly favors granting the injunctive relief Insureds seek and requiring XL to continue to advance defense expenses for the Covered Claims.

## CONCLUSION

For all of the foregoing reasons, the Insureds respectfully request that this Court grant their Motion for preliminary injunction requiring XL to continue to advance defense costs for the Covered Claims as required by the XL Policy.

Date:   March 28, 2012
        New York, New York

By:     /s/ Shawn P. Naunton
        Shawn P. Naunton
        James Sottile IV (*pro hac vice* pending)
        ZUCKERMAN SPAEDER LLP
        1185 Avenue of the Americas, 31st Floor
        New York, New York 10036
        Tel: (212) 704-9600
        Fax: (212) 704-4256
        Email:  snaunton@zuckerman.com

        P. Andrew Torrez (*pro hac vice pending*)
        ZUCKERMAN SPAEDER LLP
        100 E. Pratt St.
        Suite 2440
        Baltimore, MD  21202
        Tel: (410) 332-0444
        Fax: (410) 659-0436
        Email:  atorrez@zuckerman.com

        *Counsel for Defendant*
        *Level Global Investors, L.P.*


        Sean P. Casey
        Francisco J. Navarro
        Kobre & Kim LLP
        800 Third Avenue
        New York, New York 10022
        Francisco.Navarro@kobrekim.com
        Sean.Casey@kobrekim.com

        *Counsel for Defendant*
        *Michael Alessi*


        David B. Pitofsky
        Goodwin Procter
        620 Eighth Avenue
        New York, New York 10018
        dpitofsky@goodwinprocter.com

        *Counsel for Defendant*
        *Gregory F. Brenner*

Gregory Morvillo
E. Scott Morvillo
Robert C. Morvillo
Morvillo Abramowitz, et al.
565 Fifth Avenue
New York, New York 10017
rcmorvillo@maglaw.com

Erik L. Kitchen
Reid H. Weingarten
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
ekitchen@steptoe.com
rweingarten@steptoe.com

*Counsel for Defendant*
*Anthony Chiasson*


John K. Carroll, Esquire
Skadden, Arps, Slate, Meagher
& Flom LLP
4 Times Square
New York, New York 10036
john.carroll@skadden.com

*Counsel for Defendant*
*David Ganek*

Joseph Chiasson
15 Basswood Lane
Andover, Massachusetts 01810

*Defendant Joseph Chiasson,*
*On his own behalf*